Case No. 24-1474, Luis Martinez Sr. et al. v. Wayne County, MI et al. Argument not to exceed 15 minutes per side. Ms. Hurwitz, you may proceed for the appellant. Good morning. Good morning. May it please the Court, Julie Hurwitz on behalf of the Martinez family, many of whom are here with us this morning. As the Court knows from the briefs, the issue before this Court is whether or not the district court erred by finding that there was no clearly established right in this case for the next of kin to have the possession and control over their decedent's body after he had been transported to the Wayne County Medical Examiner's office in the beginning of February and left to languish for more than two months before the family ever even was able to learn of his presence there. And at the time that they finally went to the medical examiner's office to retrieve their loved one's body, they were told that it was too late for them to see him because he had decomposed so badly he was beyond recognition. Based on our cases and the Michigan Supreme Court cases, what is it that is clearly established? What's the clearly established constitutional right? Your Honor, the clearly established right which has been set by state law and by two published Sixth Circuit decisions of Whaley and Brotherton is the right of the family, the right of the next of kin, to have possessory control over the body of their loved one, for them to have control over how that body is buried and disposed of. Is there a timing component that's clearly established as well? Because the issue here is that obviously there was a period of time where the family wasn't notified. Well, the timing really is kind of not relevant, Your Honor, because they were never notified at all by the medical examiner. They tracked him down themselves. And so the issue is not timing. The issue is the condition of the body at the time that the next of kin obtains custody of it. And the law under MCLA 52.205-6 requires the medical examiner, once an autopsy is done, to immediately return the body to the family. And the autopsy was done immediately. The next of kin was identified immediately. The body was Mr. Martinez's body was identified immediately, and yet nothing happened. And under Brotherton and Whaley... Those two cases involve kind of the intentional removal of the corneas, right, of body parts. And I don't know, I'm not sure I understand. Like, for example, in this case, it seems like there's negligent conduct that's alleged, but it doesn't seem like it's intentional. And for a procedural due process case, we need an intentional act. So like in Brotherton, so they're intentionally removing the corneas. They're not, I mean, I don't... You allege that they intentionally delayed contacting the next of kin? What we're alleging, Your Honor, is that they knowingly and deliberately neglected to fulfill their statutory and constitutional... That sounds more like negligence, though, rather than intentional misconduct, that's all. And I don't think there's any question they're incompetent, they're negligent. I mean, it's... Well, it really boils down to, and this kind of goes to our Monell claim, which I will address shortly, it boils down to how that medical examiner's office was being operated as a whole. Over and over and over again, there are numerous examples of the office simply ignoring, and I don't see it as neglect, as negligence. I see it as a willful decision. You say there's a pattern of practice of the medical examiner doing this?  So he's done it other cases? Oh, yes. And we attached examples of... There's a Wayne County audit that was done of the medical examiner's office, and there are numerous media articles that we also attach links to in our briefs that show the numerous times that family members were treated exactly the same way as the Martinez family. So this was not simply a fluke, unusual, out-of-the-ordinary experience. This was an ongoing pattern of practice by the medical examiner's office. And so it's really, you know, when you boil it down to its essence, this is an assault on the sanctity of the family, which has been recognized since the 1800s in our jurisprudence, both under state law and federal law. And the Whaley and Brotherton cases, while it's true, it had to do with the specific removal of body parts, and as well in the in-race certified question in the Wexley case, which the Michigan Supreme Court addressed, the nature of the right is not the right to a body part, it's the right to the body as a whole. And when, in this case, the family was deprived of all of the body parts of Mr. Martinez because he was so horribly decomposed that they didn't even have an opportunity to see him, the medical examiner's office would not let the family even witness him, to identify him. They showed him a picture, and then they immediately transported him to a... I guess I don't understand, as a procedural due process matter, so what was the process that was due? The process that was due was... You have a right, and I'm still curious, I'm still questioning what the contour of the right is, because I'm not understanding that. But then what is the process that's due? Because usually it's like you get a pre-deprivation hearing, you get a post-deprivation hearing. What is the... It seems like you just wanted them to notify the family, and I can understand why, that the body is here. The process that was due was the right of this family to have the body of their loved one returned to them with their knowledge. The process was to notify and return the body to the family without the family having to chase him down. Before the deprivation... But that seems like an interest in the process itself, right? The Supreme Court has said you don't have an interest in the process itself, right? I mean, the interest is a property interest, and then you get whatever process is due, but you don't really have an interest in the process itself, right? Well, the due process interest is where the government is behaving so arbitrarily and unfairly to the plaintiffs, such that their right to obtain custody of their loved one's body has been deprived from them. So they had a right. The process that was deprived of them was the process of complying with their unquestioned statutory obligation. But you can't make a claim like that, because that's barred by Pennhurst, right? So I'm trying to figure out what the contour of the right is and then what the process is due. And I guess I get back to this question I have. It seems like it's negligent conduct, but you can't have a claim for negligence, right, under 1983? We're not alleging negligence. So are we on a motion to dismiss here? Yes. Okay, so none of that other evidence is relevant, right? The newspaper articles and the report and all of that. I mean, we can't look at evidence, right? Well, you can look at evidence by judicial notice, in particular the Wayne County audit. And we've included that in... We can take judicial notice that there is an audit filed. I don't think we can take judicial notice of every fact that's or a supposed fact that's in the report, can we? Well, in the Stucco v. Louisville Metro government case in which this court held that there is a right for the appellate court to take judicial notice, which, Judge Nalbandian, you were on that panel in that case. I wrote separately, though, on that one, didn't I? I'm curious, though, in your complaint... I'm sorry. Where is in your complaint... Where are the key allegations about whether there was intentional conduct? I'm trying to figure out where... The standard, Your Honor, is not intent. The standard is deliberate indifference. Okay, where are the allegations about deliberate indifference? What paragraphs should I be looking at? Well, Your Honor, if I direct your attention to the second amended complaint... Bear with me for a moment. I apologize. The counts... ..in the 14th Amendment violation... ..asserted that the... I mean, there's an assertion that they're denying plaintiffs their due process rights were carried out purposefully, willfully, knowingly, and with deliberate indifference. There's that, but that's just a conclusory allegation, right? Well, it is a conclusory, but on the other hand, it's not, because what we're alleging is that every step of the way they were knowingly aware of the existence of this body in the back of the room, and when they were asked, why didn't we get our brother back, the only explanation they were given was, oh, we just didn't get to it. So it's not like they were simply negligent. They were so uncaring and deliberately indifferent to the rights and the duties that they owed to this family that it was just shrugged off without a care. See, the rights and duties arise under Michigan law.  And they violated Michigan law. You're here alleging a violation of the United States Constitution... That's correct. ..in the 14th Amendment. Shouldn't you really be in state court because you have a Michigan state court violation and bringing this in state court? I recognize you probably have government immunity issues or something, but isn't this really a state court violation that belongs in state court rather than in the federal court? It's not an either-or proposition, Your Honor. The fact that there may well be a state common law claim... I think there probably is. I mean, I think they're entitled to relief... Yes, and we've alleged... ..in the Michigan courts, and I used to be a Michigan judge. We have alleged a common law claim under state law, Your Honor. Maybe they're entitled to relief in the state courts. It's just whether they have a federal constitutional claim. That's all we're going to adjudicate up here. Correct. Not whether they should be able to recover in state court, which I hope they do, by the way, anyway. Thank you, Your Honor. The nature of the claim in this case, which has been defined, the parameters of the federal right, have been defined very clearly in Brotherton and Whaley. They've clearly established that the violation of the state law has been elevated to a federal constitutional question by virtue of the way in which Whaley and Brotherton both define that federal right, which is the right to have control over their family member's body, which is protected by due process. And the language that this court used in both Brotherton and Whaley was not limited to body parts. In fact, in the Wexley case, when it came back to this panel, after the Michigan Supreme Court addressed the question of whether the medical examiner could remove a brain from a body without returning the brain, the court held, and this court adopted that view, that that right was different because there was a statute that authorized the removal of the brain. And by the way, the right is not to the body part. The right is to the body. And this family was deprived not only of body parts, but they were deprived of the entire body. I do see that my time is up. We'll give you your full five-minute rebuttal. Any further questions at this time? Judge Novandian? Just to sum up, for all the reasons in our briefs and discussed today, on behalf of the Martinez family and my co-counsel, the erroneous district court decision must be reversed. The family had a clearly established and long-standing procedural due process right to the possession of their loved one's body, as it was when death came. That's a direct quote from the courts. The defendants here committed egregious misconduct by their flagrant just willingly and not knowingly ignoring the fact that there was this dead person lying, festering in the back of their morgue, that they just didn't care to do what they were obligated to do, both under state law and the Constitution. Thank you very much. I hope the court doesn't mind if I use an iPad. It's the blind guy's notepad. Good morning. Good morning. May it please the court, Jason Killips on behalf of the Wayne County Medical Examiner's Office and the individual defendants here. This case does come up in the context of a motion to dismiss, so I think it's important to remember that the allegations, the story that we're talking about here, they are allegations only. There is now a state court action in which my client will have plenty of opportunity to tell its side of the story, but we only have one side of that story so far. But even accepting those allegations is true for the purpose of this appeal, which we have to. I think by some of the questions that you've asked, you've recognized or suggested what a high bar the plaintiffs actually have here to show that there is a clearly established constitutional right at play. I think this court said it really well in Crawford. So a complaint distinguishable from our past cases on its face, I think that's really important here, will not often survive a motion to dismiss on qualified immunity grounds. This is especially true when granting relief to the plaintiff can only be And I think that's what we're getting to with this discussion of timeliness. Now, I know that the plaintiffs want to move away from that characterization of the right that they are asserting, but even when they do that in their reply brief, they use timeliness words. If you look at page 7 of their reply, they claim a right to their loved one's body without it having been severely decomposed, i.e. dated, so that's a timeliness word, by the time, more timeliness, they finally learned that he was in the custody of the defendants. They do this a few other times in the reply brief as well. But couldn't you just solve that problem by using the, I mean, the Michigan courts have said the body as it is when death comes. It's not a timing issue. It's just that's what it is. We don't need to worry about timing, do we? That's what Whaley says. Well, but Whaley is talking about a They didn't get the body as it was when death came. I mean, everybody would agree with that, I'm assuming. I suppose you're right. We haven't heard your side of the story, but I'd be curious to hear what your side of the story is going to be. But, okay, fine. They didn't get the body as it was when death came, so why is that not enough? Well, but nobody gets the body as it was when death came because all that coroners and medical examiners can do is they can slow the decomposition process, but they cannot stop it. All right, fine. I know that it wasn't the same as it was when death came, but it wasn't even close, okay? So, I mean, even if you said an outer bound or whatever it would be, I'm not sure that would be that big a challenge to say, okay, fine, maybe the next day isn't required, but essentially never notifying them, that's problematic, right? That's never going to satisfy as when death comes, no matter how you read it. But when the cases have talked about this, they've talked about it in the context of mutilation, right? That's the word that shows up in all the Michigan Supreme Court cases about this. And the Michigan courts have held that mutilation, when we're talking about that, we're talking about some active steps taken by the defendant, the medical examiner or whatever. So we're talking about evisceration. We're talking about dismemberment. A couple of cases we're talking about amputation while the person was still alive. We're talking about stealing the eyes of a dead man, to use the way this court phrased it in Whaley. But none of those cases involve simple decomposition. So a reasonable government official in 2021 looking, surveying the relevant law and the relevant sources that this court has held are the U.S. Supreme Court, this court's decision, and the Michigan Supreme Court's decision. Surveying those sources of law, they would not have seen a single case that talked about a delay in notification. They would say, wow, as long as I'm not taking the corneas out, I can let this body sit here forever and I'm not going to be on the hook. Look, they're going to have to tell their story in state court. There's no question about that. They're going to have to defend themselves there. But the question is whether right – Let me ask you a serious question. So mutilation, why is letting – why is the decomposition process not akin to mutilation essentially? I mean you're not actively doing it, but you know it's going to happen. So maybe it's not quite the same volitional act, but it seems to result in the same thing. Well, but the way the Supreme Court has phrased the right is without mutilation, so not without something that ends up – You're talking about the Michigan Supreme Court? Yeah, they've talked about this. You have the right to possess the body and prevent its mutilation, right? And that comes up in Doxter. I think Deag cites it. Keyes cites it. A few different Michigan Supreme Court cases have cited it. I believe In re Certified Question also touched on it briefly. But in all of those cases, when the Supreme Court phrases it that way, they don't say about protecting a body from something that has a similar result as mutilation. They're using a very specific word. And the Michigan Court of Appeals, when referring to mutilation, has defined it to mean active measures. I can give you the quote. It's from – So this is from Doxter, right? The Mexican are entitled to possession of the body as it is when death comes and that it is an actionable wrong for another to interfere with that right by withholding the body or mutilating it in any way. So why is it not withholding? I mean, I understand the mutilation, but we've got withholding in there and then we have as it is when death comes. I'm not sure why that doesn't cover this situation. Because none of those cases talked about timeliness of notification about a body that has not been actively mutilated. And we've had two federal judges in times pretty comparable to when these activities took place in 2021 that surveyed the same body of law relevant here and concluded that not only was there not a clearly established constitutional right, there was no constitutional right period that was implicated. Well, the Michigan Supreme Court doesn't establish federal constitutional rights, does it? It does not, but this – That's just a matter of state law. That is a matter of state law. I'm not quite sure why we weren't talking about it because, I mean, I don't think the Michigan Supreme Court has anything to do with federal constitutional law. I mean, they can make rulings, but we don't have to file them, that's for sure. That's very true, Your Honor. But as some of the questions that you asked in the previous argument suggested, when this court is looking to define protected property interests, it does often have to look to state law. Okay, so you're saying – Okay, I see how it ties up. If there's a state property interest, then it dovetails into whether it was denied procedurally under a federal due process procedure. But I guess back there, there's no federal due process procedure here like a pre-termination of employment hearing or a post – we'd have to be inventing one, I guess. I'm sorry, I didn't follow. We'd have to be inventing a procedural due process. That's right. Because there's no authority, there's no precedent for it. And that's exactly right. So when we're talking about a 1983 claim or a Monell claim that arises under 1983, and we're talking about whether such a right has been clearly established, is this court held in Crawford, if it is something novel that you are discovering, then that can't have been clearly established. And when we look at that reasonable government official in 2021, one of the things he would have seen is the Eastern District's decision in Batter. Now, of course, that's not binding on the court. I'm not suggesting that it is. But in a very careful opinion, the judge in Batter walked through the same body of law at issue here. And that case did involve timeliness of notification because that was the Wallet case. I'm sure you remember from the briefing where the detective had missed the mother's phone number in the wallet until I think some months later. And that judge concluded that there was no constitutional right at play. Then we get to the Majerak case. I apologize. I keep pronouncing that wrong because I had it in my head forever. It was Majerak, and I believe the family pronounces it Majerak. Now, that came up after 2021. But what that judge was looking at was the same body of law that the reasonable government official in 2021 would have been looking at. And that judge, too, with a very thorough, careful opinion, came to the same conclusion, that there was no constitutional right at play in the timeliness of notification. So when we go back to the standard that this court has implied in Durham v. Newman, do we have cases, are cases that say, hey, look, the fact that district courts in our own circuit have rejected this is at least evidence that it's not clearly established. I mean, I take it that's your argument, right? Look, we've had courts look at this thing, and they've said there's no constitutional right. And surely it's not clearly established because there would be nothing that would indicate that to the reasonable officer. It's hardly my entire argument, but that is exactly my point right now, yes, Your Honor. And I'm not aware of any district court. I'm just wondering if we have any cases. Have we ever said something like, hey, there's this weight of authority in the district courts, and the fact that reasonable jurists can disagree, or nobody has found that it's clearly, in fact, they've rejected it. That's at least an addition that it's not clearly established the other way. I'm not aware of any decision by this court making that, holding or addressing that issue one way or the other, frankly. But what this court said in Durham v. Newman does go to that issue, at least, where it says, look, the right has to be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of that reasonable government official. And when you've got these federal judges who see the other side of this and say there is no right here, it is hard to say that a reasonable government official should have had no doubt that these esteemed jurists were wrong and that I am right in seeing a right that no other case points to. Just a couple of things I wanted to touch on real quick that came up during my friend's argument here. First, quickly, on the statute, the Michigan statute, there were some questions about that. I think an important thing to note in that Michigan statute, though, is that it does not on its face, and no court that I am aware of has ever held, that it creates a private right of action. It may create duties. We're going to be sussing all of that out, I am sure, in the state court action, whether it actively created a duty. Is it evidence, though, of a property interest? Is it evidence that the legislature of Michigan has said this is important that people be notified immediately or whatever it says about the bodies here, that's evidence that there's a property interest in Michigan? I think there's evidence that there is a duty, or excuse me, that it is evidence of a duty, arguably, and we'll suss that out. But for it to be a right, the statute would have to say something about who has that right. Is it the next of kin? Is it the attorney general? Who can enforce this sort of thing? Does it grant a private right of action? And the statute says nothing about that, and no court I'm aware of says anything about that either. So I don't think that that statute... Is there any consequence for failure to abide by that statute? Not on its face, but we're going to find out. Medical license, if you're a coroner or you're... I mean, what would happen? It's just out there in the ether, like, hey, do this? I mean, there are statutes like that. I'm not saying there aren't, but I'm just curious. I don't know what that outcome is. I'm not handling the state court action, and I'm sure that's going to come into play there. But as far as it creating a property interest that rises to the level that this court would apply constitutional force behind it, this court doesn't look to state statutes for that purpose, and certainly not one that doesn't explicitly create a right. Well, I mean, there's different steps here. Even if it created a property right, then you fall back. Is there a federal due process right here? And if so, what is it? Is it clearly established? I'm intent to say that they do have a property interest because of the state law statute that provides that they're entitled to have the body promptly right after death. But I'm not quite the part I get hung up with. I don't think there's a constitutional procedural due process right that's established, and then one that's clearly established either here, that the body has to be given over within a certain amount of days or whatever it is. Those are the two steps that I get hung up with. And I think you're exactly right. I was talking about the first step, but I obviously agree with you on the second step. Yeah, so I don't think we have to spend a lot of time on whether they have a property interest or not because I don't think it's dispositive. The only other point I wanted to make when we were discussing the Monell claim was about these audit reports and all of these things. Yes, this court could choose to take judicial notice if it wanted to, but the main thing I think this court needs to remember is that none of this was in the trial court record. It's not the complaint. It wasn't raised before the trial court. The trial court never considered any of this. And so I think it would be inappropriate to consider it for the first time now. Unless this court has other questions, I'm... I have none. Judge Nalbanian, Judge Mathis. All right. Thank you. Ms. Hurwitz. Just to respond to the last point on the judicial notice, I beg to differ respectfully, however, that in the case of Stucker, which was decided by this panel, this court may absolutely take judicial notice of a document or a public record even if it was not raised in the district court below. So I would start with that. Didn't that report come out while the case was on appeal or something? There was some timing issue there. And I guess the other point I would... Well, I mean, there's that, and then there's the question of that. Because normally if you're going to take judicial notice of something, you would still file it in the district court, right? Once you take judicial notice of these things. I mean, maybe you wouldn't, I suppose. I'm sorry. I didn't... You would file it in the district court at least if you want to take judicial notice of some facts or a report. We have an opportunity to do that. We certainly would. But I guess I'm wondering, I mean, I don't... My understanding, and maybe I'm wrong, is I'm not sure you can take judicial notice of everything that's in the report. You can certainly take judicial notice of the fact that somebody did a report on whatever date it was. But it's not like you can say the 10 things in this audit report that they are saying happened actually happened. I believe that is, in fact, what the court did in the Stucker case. And I quote, the court may take judicial notice of public records outside the record on appeal. And in the analysis that the court undertook in Stucker, they went into the body of the report and relied on what was the content. I mean, I think the case was remanded so that the district court could sort out what it was going to do with... Which is all we're asking this court to do as well, Your Honor. Right. Okay. As far as the applicability of the Batter and Mijarczak case, we're aware of that case. We acknowledge that those two cases were decided. However, they are not... We believe they were wrongly decided. This court is not bound by them. One of them wasn't even published. But I will direct the court to a number of other cases in which, in fact, the procedural due process, the courts have found that the failure to properly allow a family member to get custody of their loved one's body is elevated to a federal constitutional due process right that's been violated. And just in the interest of time, I direct you to the Culberson case, Mitchell v. Savage, which was just decided this past October, the Dampier case... These are all in your brief. They are, other than the Mitchell v. Savage, Your Honor, and we can submit it to the court in Rule 20. What's the site of Mitchell v. Savage? The site to Mitchell v. Savage is... It's an Eastern District of Kentucky case. It's not a Sixth Circuit case. It was just decided in the fall, and so currently there's only a Westlaw site, 2024 W.L. 4437632. I have hard copies of the opinion with me if the court is interested. Are the other cases, are they Circuit Court cases or are they District Court cases? The Dampier case is a State Court case. The Culberson case is also a Federal District Court case. So I will concede that, at this point, all of the prior cases, including Batter and Mijorzak, are not Sixth Circuit cases. It's kind of hard to say that just a couple of random District Court opinions clearly establish the law. I mean, we normally require a little bit stronger authority than that. Well, Your Honor, it is up to this court to see the facts of this case and to apply the constitutional standard to this case and the facts of this case in reliance on authority that, while not binding, is very... is influential, I guess, for lack of a better word. Under qualified immunity, the clearly established prong, qualified immunity protects all except the incompetent because the law is clearly established and all government officials would know what the law is and, therefore, they're bound to follow it because they all would know it. And saying that there's a couple of District Court opinions that might support you somewhere. Well, Your Honor, I direct you back to Whaley and Brotherton because, while the facts of those cases are different, the substantive holdings of those cases are directly applicable to what happened here. Whaley, they both used the phrase that a party, a family member cannot have their loved one's body withheld or mutilated. So it's not just the act of mutilation that raises to the level of a constitutional protection. It's the withholding of the body that resulted in the harm. Now, there were some questions about timeliness here. They didn't withhold it. They just failed to notify. Isn't that... No, notification is not the issue, Your Honor. Notification is necessary, but the violation was not the failure to notify. Aren't they required by statute to hold the body until the next of kin arrive and claim the body? I mean, they're instructed to hold the body, aren't they? I'm sorry? Aren't they instructed under state law, the medical examiner, to hold the body? No, they're instructed to promptly and as quickly as possible return the body to the family. It does require notification. But then hold it in the interim, right? I mean, that's what they do. It requires notification, which is what sort of is the trigger to allowing, enabling the family to be aware that their loved one is there. But the problem here was the failure to notify and return the body was what happened. You can't look at one without the other. The issue of timeliness, for example, if instead of just letting them sit in the back of a horribly ventilated, poorly cooled facility, which is what part of the audit determined, had they put them in a deep freeze or put them in an environment where he wouldn't have decomposed, it wouldn't have mattered how long it took. We wouldn't be here today. There would be no constitutional violation. The issue is that they failed to return the body. They allowed the body to decompose beyond recognition before the family was able to even know that he existed. And they never notified the family. Sure. Any further questions? I'll band in. Judge Matt. All right, thank you very much for your argument, counsel. The case will be submitted. Thank you. We'll call the next case.